## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SAWMILL BUILDING SYSTEMS, INC.<br>8634 Station Street<br>Mentor, OH 44060 | **CASE NO:** |
| Plaintiffs,<br>v. | **JUDGE:** |
| ALLEGION, PLC<br>11819 N. Pennsylvania St.<br>Carmel, IN 46032 | **PLAINTIFF'S COMPLAINT** |
| And | |
| ALLEGION S&S LOCK HOLDING<br>COMPANY<br>11819 N. Pennsylvania St.<br>Carmel, IN 46032 | **JURY DEMAND ENDORSED HEREON** |
| ALSO SERVE:<br>REGISTERED AGENT<br>CT CORPORATION SYSTEM<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| And | |
| ALLEGION US HOLDING COMPANY,<br>INC.<br>11819 N. Pennsylvania St.<br>Carmel, IN 46032 | |
| ALSO SERVE:<br>REGISTERED AGENT CT CORPORATION<br>SYSTEM<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| And | |
| SCHLAGE LOCK COMPANY, LLC<br>11819 N. Pennsylvania St.<br>Carmel, IN 46032 | |

1

|
ALSO SERVE:                                    |
REGISTERED AGENT                               |
CT CORPORATION SYSTEM                          |
4400 Easton Commons Way, Suite 125             |
Columbus, OH 43219                             |
                                               |
                Defendants.                    |

## *COMPLAINT*

Plaintiff, Sawmill Building Systems, Inc. ("Plaintiff" or "Sawmill"), files this Complaint against Defendants Allegion, PLC ("Allegion"), Allegion S&S Lock holding Company ("Allegion Lock"), Allegion Us Holding Company ("Allegion Holding"), and Schlage Lock Company, LLC ("Schlage") for Intentional Interference with Contract, Interference with Prospective Contractual Relationship, and Intentional Interference with Business Relations.

## *INTRODUCTION*

Sawmill is an online building supplies retailer. For years, and without any interruption, confusion and/or complaints, Sawmill would purchase Allegion/Schlage products directly from product dealers, make no changes, whatsoever, to the product or packaging, etc., then resell those products via its online sales platform. This process resulted in significant profits for Sawmill, and absolutely no market or product damage, in any form, to Allegion/Schlage. Nonetheless, Allegion/Schlage have ordered various distributors to stop doing business with Sawmill so that Sawmill can no longer resell products in the stream of commerce which they have the right to do. By ordering the distributors to no longer do business with Sawmill, thus cutting off its supply, Allegion/Schlage has interfered with Sawmill's contracts with those distributors, as well as Sawmill's business and contractual relations resulting in an unlawful restraint of trade.

2

### *JURISDICTION AND VENUE*

1.   Jurisdiction over Plaintiff's claims is conferred on this Honorable Court pursuant to 28 U.S.C. § 1332, because complete diversity exists among the parties as (1) Plaintiff Sawmill is a business/citizen of the State of Ohio, and the Allegion Defendants are Delaware corporations, and Defendant Schlage is a Delaware corporation, and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.

2.   This Honorable Court has personal jurisdiction over Defendants, because each Defendant has sufficient minimum contacts with the State of Ohio.

3.   Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(d), in that a substantial part of the events, decisions, planning, actions, and omissions giving rise to Plaintiff's claims occurred in this district and within the boundary of the Northern District of Ohio, and in that one or more Defendants as a corporate entity is subject to the personal jurisdiction in this District.

### PARTIES

4.   Plaintiff is a for-profit corporation, duly organized in the state of Ohio and registered to perform business with the Ohio Secretary of State.

5.   Defendant Allegion is a leading global provider of security products and solutions, including the manufacturing of residential and commercial safety and security products. Allegion Lock is a Foreign For-Profit Corporation, licensed to perform business in the State of Ohio[1], with its principal place of business located at 11819 North Pennsylvania Street, Carmel, Indiana 46032.

6.   Defendant Allegion Lock is a leading global provider of security products and solutions, including the manufacturing of residential and commercial safety and security products. Allegion Lock

---

[1] State of Ohio Certificate No. 2274535.

is a Foreign For-Profit Corporation, licensed to perform business in the State of Ohio[2], with its principal place of business located at 11819 North Pennsylvania Street, Carmel, Indiana 46032.

7.    Defendant Allegion Holding is a leading global provider of security products and solutions, including the manufacturing of residential and commercial safety and security products. Allegion Holding is a Foreign For-Profit Corporation, licensed to perform business in the State of Ohio[3], with its principal place of business located at 11819 North Pennsylvania Street, Carmel, Indiana 46032.

8.    Defendant Schlage is an Allegion Brand Company. It is also a Foreign Limited Liability Company, with its principal place of business located at 11819 North Pennsylvania Street, Carmel, Indiana 46032, that is licensed to perform business in the State of Ohio.[4]

### ALLEGATIONS – GENERAL AS TO ALL COUNTS

9.    Plaintiff incorporates by reference all facts, statements and allegations contained in the above paragraphs as though expressly re-written and restated herein.

10.    Sawmill is an online building supplies retailer. It has been supplying building materials since 1989 and in approximately 2008, expanded its business into online sales of building materials locksets and hardware, including , among other brands, Schlage.

11.    Sawmill has been selling Schlage products through its e-commerce online platforms for over a decade to hundreds of thousands of satisfied customers.

12.    Sawmill has no contractual relationship with the Defendants.

13.    However, Sawmill did have contractual relationships with, and regularly and lawfully purchased Schlage products from Allegion/Schlage product distributors, such as Topnotch, Inc. ("Topnotch") and Banner Solutions ("Banner")[5].

---

[2] State of Ohio Certificate No. 2274535.
[3] State of Ohio Certificate No. 2274534.
[4] State of Ohio Certificate No. 2245303.
[5] These are independent distributors.

4

14. For over a decade Sawmill regularly purchased from various distributors, stocked, displayed, and resold the Schlage products in the same condition as they were purchased from the Allegion/Schlage product distributors in an unchanged state.

15. The Schlage products that Sawmill purchased from the Allegion/Schlage product distributors, and then resold through its online retail platforms, were not in any way materially different from the products initially sold from Allegion/Schlage to their product distributors, and caused no confusion in the marketplace.

16. Sawmill is not the only online retailer of Allegion/Schlage products that are purchased directly from Allegion/Schlage distributors then resold online. For example, Build.com is also an online ecommerce retailer of home products, including the very same Allegion/Schlage products that Sawmill has sold for over a decade, but are now precluded from doing so. And, like Sawmill, Build.com purchases Allegion/Schlage products directly from Allegion/Schlage product distributors, and resells them to consumer end-users.

17. There is no difference between how Build.com purchases and then resells the Allegion/Schlage products, and how sawmill did it before sawmill was cut-off by the distributors by way of Defendants' improper inducements.

18. Sawmill uses the same product description and information for the Allegion/Schlage products it sells/sold as the distributors from which it purchased those products.

19. Sawmill does not alter and/or modify any of the Allegion/Schlage products it sells/sold to its consumer end-users.

20. Sawmill has been selling Allegion/Schlage products online for over a decade, very successfully, profitably and with unmatched consumer satisfaction. Just in approximately the last five (5) years, since 2014, Sawmill recognized total gross sales increase from $315,417.49 in 2014 to

$858,196.68 in 2018. Similarly, Sawmill's percentage of profit increased from 19.89% to 27.09% for that same time period, resulting in net profit dollars to increase from $62,739.86 in 2014 to $232,460.86 in 2018.

21. As of September 31, 2019, Sawmill's sales decreased by $146,128.01, and its gross profits sunk by $46,671.87 from the same reporting period in fiscal 2018, directly related to Defendants illegally cutting off Sawmill's supply through the product distributors.

22. On or about February 14, 2018, Sawmill applied to be an Allegion/Schlage Product Online Seller ("Application").

23. Subsequent to issuing its Application, Allegion/Schlage verbally advised Sawmill that its Application was approved.

24. Thereafter, on April 24, 2018, Allegion notified Sawmill that Sawmill's Application to be an Product Seller of Schlage products was rejected and Sawmill was not product to sell Allegion/Schlage products on any public website, despite the fact Allegion/Schlage had no authority to impose that moratorium upon Sawmill. Sawmill was placed on the Allegion/Schlage "Do Not Sell" list, despite its strong and successful history of selling Allegion/Schlage products, and despite the fact that other online retailers, such as Build.com, were doing the exact same thing without being penalized.

25. On March 4, 2019 Allegion notified Sawmill that any sale of Allegion/Schlage products on public websites without Allegion's authorization was a breach of Allegion's policies and, allegedly, violated numerous federal and state laws. Allegion ordered Sawmill to immediately cease and desist selling Allegion/Schlage products, and remove all Allegion products on any of Sawmill's public websites.

26. On April 22, 2019 Sawmill received notice from E-Bay that its listing had been removed for alleged copyright violation. Upon information and belief, this penalty was at the request of Allegion/Schlage.

27. On April 25, 2019 Allegion/Schlage, through it legal counsel, asserted that Sawmill's sales of Schlage products on the internet constituted trademark and copyright infringement, because Schlage has quality controls and vetting that only applies to product resellers. Allegion/Schlage also asserted that Sawmill was not protected by the First Sale Doctrine because the products Sawmill sells allegedly "fit the 'materially different' exception."

28. Allegion/Schlage's commercial harassment of and discrimination against Sawmill by intentionally interfering with Sawmill's ability to contract and conduct business has resulted in, among other things, an unlawful restraint of trade, which has significantly damaged Sawmill's ability to conduct its business, resulting in substantial financial damages to Sawmill.

## FIRST CAUSE OF ACTION
### *Intentional Interference With Contract*

29. Plaintiff incorporates by reference all facts, statements and allegations contained in the above paragraphs as though expressly re-written and restated herein.

30. At all times relevant hereto, Plaintiff had contractual relationships with various distributors of Allegion/Schlage products, such as Topnotch and Banner.

31. At the improper and unprivileged demand of Defendants, each of these distributors have ceased selling to Plaintiff the Allegion/Schlage products which they have been selling to Sawmill for over a decade.

32. Defendants have knowingly, and without privilege to do so, caused and/or induced each of these distributors to breach their long-standing contractual relationship with Sawmill and/or prevented

each of these distributors from entering into and/or continuing their contractual relationship with Sawmill.

33. Defendants induced these various distributors to breach their respective contracts with Sawmill and/or prevented these various distributors from contracting and/or continuing their contractual relationship with Sawmill, by threatening these distributors with economic harm if they contracted with and/or continued to contract with Sawmill in the sale of Allegion/Schlage products to Sawmill for resale by Sawmill on its various online retail platforms.

34. As a direct and proximate result of these Defendants unlawfully and improperly interfering with Sawmill's contractual relations with the various distributors, Sawmill has and will continue to be materially and financially damaged in excess of $75,000.00.

## SECOND CAUSE OF ACTION
*Intentional Interference With Prospective Contractual Relationship(s)*
*[The Distributors]*

35. Plaintiff incorporates by reference all facts, statements and allegations contained in the above paragraphs as though expressly re-written and restated herein.

36. At all times relevant hereto, Plaintiff had contractual relationships with various distributors of Allegion/Schlage products, such as Topnotch and Banner.

37. At the improper and unprivileged demand of Defendants, each of these distributors have ceased selling to Plaintiff the Allegion/Schlage products which they have been selling to Sawmill for over a decade.

38. Defendants have knowingly, and without privilege to do so, caused and/or induced each of these distributors to breach their long-standing contractual relationship with Sawmill and/or prevented each of these distributors from entering into and/or continuing their business relationship with Sawmill and/or not perform their contract with Sawmill.

39. Defendants have knowingly and improperly, and while employing improper means, prevented Sawmill from acquiring and/or continuing its prospective business relations with the various distributors, which has and will continue to create and/or result in restraint of trade.

40. Defendants induced these various distributors to cease their business relationship with Sawmill and/or prevented these various distributors from contracting and/or continuing their contractual and business relationship with Sawmill, by threatening these distributors with economic harm if they contracted with and/or continued to contract and/or continued to engage in business with Sawmill in the sale of Allegion/Schlage products to Sawmill for resale by Sawmill on its various online retail platforms.

41. As a direct and proximate result of these Defendants unlawfully and improperly interfering with Sawmill's prospective contractual and/or business relationships with various distributors, Sawmill has and will continue to be materially and financially damaged in excess of $75,000.00.

### THIRD CAUSE OF ACTION
*Tortious Interference With Business Relationships*

42. Plaintiff incorporates by reference all facts, statements and allegations contained in the above paragraphs as though expressly re-written and restated herein.

43. For the last decade, Sawmill has lawfully purchased Allegion/Schlage products from various distributors, and then legally resold those exact same Allegion/Schlage products to hundreds of thousands of end-user consumers.

44. Defendants have full knowledge of Sawmill's successful resale record.

45. Defendants' interference with a business relationships includes those prospective contractual relations with the end-user consumers that Sawmill has a well-documented sales history of selling to that have not been reduced to contract, but Sawmill would have consummated, but is now prevented from because Defendants have wrongfully and improperly placed Sawmill on a "No Sell

List," and instructed various distributors to no longer sell Allegion/Schlage products to Sawmill for resale.

46. Defendants' intentional interference with Sawmill's business relations is unjustified, and intentionally designed to freeze Sawmill out of reselling Allegion/Schlage products, thus resulting in a restraint of trade and significant monetary damages to Sawmill.

47. As a direct and proximate result of these Defendants unlawfully and improperly interfering with Sawmill's prospective business relationships with various end-user consumers, Sawmill has and will continue to be materially and financially damaged in excess of $75,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, respectfully demand that this Honorable Court enter judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages in an amount to be determined, together with prejudgment interest on said amount in excess of $75,000.00;

2. Punitive damages in an amount to be determined;

3. Plaintiff's costs and reasonable attorney's fees as permitted by law;

4. Any other or further relief which the Court deems fair and equitable.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all claims so triable.

Respectfully submitted,
*/s/ Thomas J. Connick*
Thomas J. Connick (0070527)
CONNICK LAW, LLC
25550 Chagrin Blvd., Ste. 101
Beachwood, OH 44122
PH: 216-364-0512 | FX: 216-609-3446
Email: tconnick@connicklawllc.com
*Attorneys for Plaintiff*

10